FREEMAN v. TERRY. †

(Court of Civil Appeals of Texas. San Antonio. Jan. 17, 1912. Rehearing Denied Feb. 28, 1912.)

1. RAILROADS (§ 350*)—INJURIES AT CROSSINGS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Whether a pedestrian, injured while passing between two cars in a train obstructing a street, caused by the sudden movement of the train, was guilty of contributory negligence held, under the evidence, for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

2. RAILROADS (§ 304*)—USE OF OBSTRUCTED CROSSING—TRESPASSERS.

A person attempting to pass between cars in a train obstructing a crossing for an unreasonable time is not a trespasser, where he does not know that the train is liable to start at any moment, and where he has no reason to think that it will start; and the trainmen must exercise reasonable care for his protection.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 964; Dec. Dig. § 304.*]

3. RAILROADS (§ 304*)—OBSTRUCTING CROSSINGS—CARE REQUIRED.

A railroad company unnecessarily obstructing the principal street of a town by its train must exercise the care for the protection of pedestrians which was reasonably called for to avoid dangers which ought to be anticipated to pedestrians attempting to pass between cars.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 964; Dec. Dig. § 304.*]

4. RAILROADS (§ 350*)—OBSTRUCTING STREETS—NEGLIGENCE—QUESTION FOR JURY.

Whether a railroad company unnecessarily obstructing the principal street of a town by its train was guilty of actionable negligence, resulting in injury to a pedestrian at-

tempting to pass between cars in the train, held, under the evidence, for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

5. APPEAL AND ERROR (§ 882*)—QUESTIONS REVIEWABLE—REQUESTED INSTRUCTIONS.

A defendant who, with a peremptory instruction, also asks charges on its negligence, one of which is given, and charges submitting plaintiff's negligence, one of which is given as asked, and another given with a qualification, is estopped from complaining of the submission of the issues of negligence and contributory negligence on the ground of the insufficiency of the evidence to warrant it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

6. RAILROADS (§ 351*)—INJURIES TO PERSON ON CROSSINGS—INSTRUCTIONS.

Where, in an action against a railroad company for injuries to a pedestrian while attempting to pass between cars in a train obstructing a street, there was evidence justifying a finding that the pedestrian was not guilty of contributory negligence, and that the company, in failing to take precautions to protect pedestrians, was guilty of actionable negligence, a charge that the trainmen were not required to sound the bell or the whistle, or otherwise give warning of the moving of the train, unless they had notice that persons might be crossing between the cars at the time, was properly refused, because reducing the issue of negligence to the question of discovered peril.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1193–1215; Dec. Dig. § 351.*]

7. RAILROADS (§ 304*)—INJURIES TO PEDESTRIANS—NEGLIGENCE.

A railroad company unnecessarily obstructing with its train a street of a town is chargeable with knowledge of what, by due diligence, it should have known, and is liable for the negligence of its employés in failing to observe and know the existing conditions, and a charge that, if the employés had no notice that persons were crossing between the cars, the company was not liable for injuries to a person attempting to pass between cars was properly refused, because calculated to induce the jury to believe that actual notice was essential to liability.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 964; Dec. Dig. § 304.*]

8. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF THE EVIDENCE.

An instruction, in an action against a railroad company for injuries to a pedestrian while attempting to pass between cars in a train obstructing a street, that the trainmen could block the crossing for such a time as was reasonably necessary in loading the cars was on the weight of the evidence, because removing from the jury the right to consider the practicability of leaving the crossing open during the work.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 439–441; Dec. Dig. § 194.*]

9. RAILROADS (§ 351*)—INJURIES AT CROSSINGS—INSTRUCTIONS—MISLEADING INSTRUCTIONS.

An instruction, in an action against a railroad company for injuries to a pedestrian while passing between cars in a train obstructing a street, that the jury cannot consider the fact that school children crossed the track between the cars, in passing on the issue of the contributory negligence of plaintiff in passing between the cars, but that such fact could be considered on the issue of notice to

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

the trainmen that persons were so crossing the track, was not misleading; for the jury must have understood that the fact could be considered only on the issue of negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1193–1215; Dec. Dig. § 351.*]

10. RAILROADS (§ 347*)—INJURIES TO PEDESTRIANS—EVIDENCE—ADMISSIBILITY.

In an action against a railroad company for injuries to a pedestrian while passing between cars in a train obstructing the crossing, evidence that other persons, not of tender age, crossed the train in the manner plaintiff did was admissible on the issue of contributory negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1134; Dec. Dig. § 347.*]

11. RAILROADS (§ 347*)—INJURIES TO PEDESTRIANS—EVIDENCE—ADMISSIBILITY.

Where, in an action against a railroad company for injuries to a pedestrian while passing between cars in a train obstructing a street, the company showed that other persons, in the exercise of ordinary care, went around the train, instead of going over the train, evidence that other persons crossed the train in the manner plaintiff did was admissible.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 347.*]

Appeal from District Court, Frio County; J. F. Mullally, Judge.

Action by William Terry against T. J. Freeman, receiver. From a judgment for plaintiff, defendant appeals. Affirmed.

Jno. M. King, Hicks & Hicks, F. C. Davis, and B. W. Teagarden, for appellant. R. W. Hudson, J. T. Bivens, Magus Smith, H. C. Carter, and Perry J. Lewis, for appellee.

JAMES, C. J. The action is by William Terry for damages for injury to his right foot, which was caught by the drawheads or coupling apparatus of one of defendant's trains, while plaintiff was in the act of crossing over between the cars.

The negligence of defendant, alleged as the cause of the injury, was, in substance, that the train in question was a long freight train which had stopped at the station of the town of Dilley, and for several hours stood there, blocking several of the public streets and thoroughfares of the town. That while the train so obstructed said public crossings many persons and citizens of the town going from one part of the town to the other were obliged to and did cross over and between or under the cars, and defendant's servants knew, or by the exercise of ordinary care would have known, the people were so crossing the train, and it was the duty of said employés not to move the cars without giving notice or warning of their intention to move them; and, as said cars were standing across two of the public and most used streets of the town, it was the duty of said employés to exercise reasonable care to look out at said crossings and to exercise reasonable care to see and know that said crossings were clear of persons attempting to cross

before moving the cars. That at the time said cars were moved, whereby plaintiff's injury was caused, they were moved without any notice or warning whatever, and plaintiff had no knowledge or notice that the cars were about to be moved, and defendant's employés in charge of and operating the train negligently failed to keep or maintain a reasonable lookout at said place, or to exercise ordinary care to see that said crossings were clear, and that there were no persons engaged in attempting to cross over between the cars at said place, but suddenly put the same in motion without having given any signal or warning, and without having kept or maintained a reasonable lookout at such places, and without having exercised reasonable care to see that these crossings were clear of persons attempting to cross, and the said several acts of negligence directly contributed to cause plaintiff's injury.

Defendant demurred, and answered by general denial, and that at the time defendant was loading cattle, and, in order to do so, it was necessary to place the cattle cars composing the train at the cattle chute successively, which was done in the usual manner by placing the door of a car at the door or gate of the chute, loading the car, and then moving the train up the distance of another car; that, in order to do this, it was necessary for the train to block the particular crossing at the time in question; that while the train was standing there defendant was ready to cut the cars, upon request, to allow any one to pass, and did so several times during the time the train was standing there, and any one could, and many persons did, with the knowledge of said employés, pass around either end of the train, without requesting or waiting for the train to be opened for them; that if the train was blocking the crossing plaintiff could have safely gone around either end of the train, but instead, and without requesting the train to be cut, and without waiting to see whether it would clear the crossing, he leaped up between the cars in the dark, and placed his foot upon the drawheads just as the train was moved; that said employés had no knowledge at the time of the presence of plaintiff at the place, nor that he was attempting to climb between the cars; and that his conduct was negligence, which was the proximate cause of his injury. Plaintiff obtained a verdict for $7,500.

The first assignment of error alleges that the court erred in denying defendant's motion to direct a verdict for defendant after plaintiff had introduced his evidence; appellant contending by its propositions that the evidence showed plaintiff was guilty of contributory negligence.

The testimony disclosed the following facts: Defendant's employés were engaged in

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

handling and loading a long stock train of 19 stock cars and several other cars at the station of Dilley. The track upon which the train stood ran practically north and south through the town, dividing it into east and west portions. South of the depot and the stock pen, the railroad crossed Miller street, the principally traveled street or crossing from one side of the town to the other. To the north was another parallel street, also crossed. From some time in the afternoon, about 3:30 o'clock, until after dark, this work of loading the train was in progress, and these streets blocked most, if not all, of the time. The engine was to the north, and when one car was loaded the train would be pushed back south until another car was at the pen to be bedded and loaded, and so on during the afternoon. The plaintiff, a doctor, had occasion to go from the east side of the town to the west side, between 6 and 7 o'clock, to see a patient. He came to the crossing on Miller street, which he found obstructed by the train. There was nobody on that side, and everybody was on the opposite side, up about where the stock pen was. He testified that he stood and waited a while to see if there was any occasion to move the train at that time, and hearing the men whooping and "hollering" down at the pen, and knowing that they were loading cattle, he passed over between two cars, and while he was doing so the cars moved forward and backward and jammed together, and his foot was caught and injured. He stated that, before attempting to cross over, he stood there "two or three minutes—a minute or so"—and looked up the track toward the engine and saw it up beyond the pen, and looked the other way and there was nobody there, and he heard no signals at all.

The witness Finch testified that when he went to his supper he crossed at this place by crawling under the train, and after supper came back and crawled through again, and he met plaintiff about 30 steps from the crossing, on the east side of the track, on Miller street, after he had crossed himself, and that he did not hear the bell ring or whistle blow after he met plaintiff.

Another witness, Lawrence, testified that he crossed between the cars over the couplings between the stock pens and the Miller street crossing about 6 o'clock, going from the east part of the town to the west part, and afterwards recrossed at the same place in the same way about 7 o'clock; that before he did so he took occasion to notice if there were any signals given, and heard the noise down at the pen, and heard they were running cattle into the cars, and went over.

There was testimony that other adult people crossed the train on Miller street by going over or under the cars during the time the streets were obstructed by these cars. We need not refer to school children who did so. There was testimony that persons using Miller street, to avoid going across the train, would have to go some distance in either direction to go around the train, and the walk was a hard one.

The motion to instruct for defendant upon the testimony as it was when plaintiff rested his case necessarily involved the claim that plaintiff had shown no negligence of defendant, or had conclusively shown contributory negligence on the part of plaintiff in undertaking to cross the train, under the circumstances.

[1] The testimony above stated was sufficient to rebut contributory negligence. The question in that respect is, Was plaintiff's conduct that of an ordinarily prudent person? The fact that he observed some circumspection before undertaking the act, and his acting upon appearances and conditions which he observed, and which suggested that the train was not about to be moved at the time, made his negligence a question of fact. It is true none of the employés had told him to cross as he did; and it may be conceded that if he had proceeded to cross between the cars without taking any notice whatever of his surroundings, and of what was being done in connection with the train, it might have been said that his injury was due to his recklessness. There are cases which hold that, where a person thus crossing over a train knows at the time that an engine is attached to the train, he must take notice that it is liable to be moved at any moment, and cannot recover if he attempts to cross over and is injured by a sudden movement of the train. This is a reasonable doctrine. Plaintiff admitted that he observed the engine's position, but stated: "When I approached the crossing, I said I did not see anybody about the train at all; that is, the train crew. I had met Mr. Finch. I had seen no one but Mr. Finch before I got to the crossing. I heard the noise of whooping and hollering at the cattle, made by the men at the stock pen, and knew they were loading cattle, that they loaded one car at a time, and knew that they moved the car that was loaded and placed another one, then loaded another one, moved the train and 'spotted' it, as they call it, at the chute, and then loaded another and spotted that." It thus appears that he consulted the existing conditions as to the probability of the danger of the train moving. Not being able to see what was being done at the pen, which was on the other side of the train from him, but hearing sounds there which attend the loading of cattle into cars, he concluded the cars were not about to be moved, and proceeded to cross over. It appears that Mr. Lawrence crossed the train in the same way and did so upon the same assumption arising in his mind from the same fact. It seems clear that the question of plaintiff's conduct on this occasion, as to its being the conduct of a person of ordinary prudence, was one for the jury.

[2] It is further contended under the first assignment, by the third proposition, that, "where one crawls or climbs over the drawheads or couplings of a train obstructing a crossing, and he knows the train may be moved at any moment, and it is moved while he is so crossing over, and he is injured by the cars, he cannot recover damages from the owner or operators of the train, in the absence of actual knowledge of the employés operating the train that he was between the cars, or that he was going between the cars." The same proposition, in substance, is advanced under the second assignment, together with the further proposition that one who approaches a railroad crossing and finds it blocked by a train, and waits only a moment and then climbs between and upon the connected cars and over the drawheads, is a trespasser, for whose injury, brought about by a movement of the train engaged in its business, the receiver of such railroad ought not justly to be held liable.

We could assent to the proposition that such person could not recover where he knew the train was about to start, or liable to start, at any moment. But, as heretofore explained, it appears that plaintiff did not know this, and had reason to think otherwise. Under this evidence, plaintiff cannot be regarded as a trespasser (Littlejohn v. Railway Co., 49 S. C. 12, 26 S. E. 967), and it therefore cannot be held that no duty was owing pedestrians along the highway until they were discovered in a place of danger. Railway v. Green, 20 Tex. Civ. App. 5, 49 S. W. 670. That a railroad permits its train to obstruct a highway for an unreasonable time is itself an act of negligence. It seems to us that, where a train is held obstructing a street unnecessarily and for an unreasonable time, it is a wrongdoer, and not entitled to precedence in the use of the street as against the right of the public to pass, and is in no position to say that a person crossing over its train in using the highway is a trespasser on its premises and property. The business of loading these cars could have been conducted, with some additional trouble on the part of the employés, and the crossing or crossings left open practically all of the time. They chose to conduct it in such a way as to keep the street unnecessarily blocked from early in the afternoon until after night. The street where plaintiff met his injury was the principal street of the town, leading from one part of the town to the other, and the evidence shows it was considerably used during that afternoon. Some pedestrians took the pains to go out of their way around the train; but others crossed over or under the cars. The facts showing that the crossing was a thoroughfare, and the main one in the town, and that the citizens had frequent occasion to use it, created a condition of things which called for the use, by the employés, of some care for the safety of those who, it must have known, might attempt to cross at that place. At least, the jury could have so viewed it. It could reasonably have been anticipated that some persons, at least, would undertake to cross over between the cars, where they were held on the track obstructing the crossing for a considerable time.

As stated in Schlemmer v. Railway Co., 205 U. S. 1, 27 Sup. Ct. 407, 51 L. Ed. 681: "Aside from the knowledge possessed by brakemen that the plaintiff and his companions and others were about the cars, a jury might well find, from all the circumstances that the train operatives, in the exercise of ordinary care, ought to have anticipated that persons might be in the act of crossing, or be on, or between, or about, the cars, and that not to give warning before moving the train would result in injury."

[3, 4] The negligence embodied in the testimony was the act of suddenly and without warning, and without any provision for the protection of persons that might be using the street crossing, setting the train in motion. The care defendant was required to exercise in this transaction was that degree of care which was reasonably called for to meet and avoid the dangers which ought to have been anticipated under the circumstances. The jury may well have concluded that the operatives of the train should have handled the cars so as to not leave standing cars to obstruct the passage of pedestrians, by leaving the way open to the public every time the train was moved to bring another car to the chute, or, if it chose to not do this, and to leave cars blocking the crossing, to have some one there to warn persons desiring to cross of a contemplated movement, or by signal or otherwise to see that they crossed without exposure to danger from such source. It is true that some of the trainmen testified that the cars were opened that afternoon for persons to cross, when the brakemen or conductor signaled the engineer to do so. These men were not stationed at the crossing, and persons who crossed under or over the train, including plaintiff, did not have the advantage of the presence of the brakemen or conductor to attend to this provision for their safety. Whether or not the employés of defendant acted with reasonable care in respect to a duty imposed upon them by the existing conditions and all the circumstances, with reference to the public having occasion to use this street crossing, was a question for the jury, and they could properly, under the evidence, have found that they did not exercise the care the situation demanded of them in that respect. These conclusions lead us to overrule the assignments from 1 to 5, inclusive, and also the seventh.

[5] Although we have considered the testimony, with reference to its sufficiency to raise the issues of defendant's negligence and plaintiff's contributory negligence, we

may remark that it appears that defendant, after the evidence was all in, asked, in general terms, a peremptory instruction, together with charges submitting the issues. The court was not informed upon what defendant sought the general peremptory instruction. It appears to have been contending that defendant was not negligent, that plaintiff was guilty of contributory negligence, and that plaintiff was a trespasser. Defendant, along with the peremptory instruction, asked charges upon defendant's negligence, one of which was given, and charges submitting plaintiff's negligence, one of which was given as asked, and another given with a qualification. In these circumstances, it has been held that defendant is estopped to complain of the submission of the issues upon the ground that the evidence did not warrant it. Poindexter v. Kirby, 101 Tex. 322, 107 S. W. 42. See Alamo Oil Co. v. Curvier, 136 S. W. 1133, and case there cited.

[6] The sixth complains of the refusal of the following instruction: "The employés in charge of the train at Dilley, at the time in question, did not have to ring the bell or sound the whistle, or otherwise give warning of the moving of the train, unless such employés had notice that persons were or might be crossing under or between the cars at the time." This was properly refused. It would have excluded consideration of any notice to the employés, except notice that some one, at the time plaintiff was hurt, was in danger from a movement of the train. This would, in effect, have reduced the question to discovered peril. The court, however, gave another of defendant's special charges, the seventh, which, on the subject of notice, was more favorable to appellant than was required.

[7] In this connection, we consider the fifteenth assignment, which complains of the refusal of this charge: "You are instructed that if you believe from the evidence that certain persons crossed the track at Dilley at the time in question between or under the cars, but you further find that the employés of defendant had no notice that persons were so crossing under or between cars, if you find they were so doing, you will find for the defendant." The purpose of this charge was to have the jury charged that, unless defendant's employés had knowledge that persons passed between or under the cars, defendant was entitled to a verdict. Defendant could have been found liable, independent of actual notice to its employés that persons were so passing. The charge was calculated to induce the jury to believe that actual notice was essential to its liability. Defendant was liable if it was negligence on the part of the employés to not know such fact under the existing conditions. Defendant was charged with knowledge of what, in the course of due diligence, it should have known. If notice was essential, as this charge undertook to state, defendant would not have been liable, had the employés given no attention whatever to conditions at this street crossing, and hence had acquired no knowledge thereof, notwithstanding the circumstances may, in the opinion of the jury, have imposed on them a duty to observe and know what was going on.

[8] The eighth complains of the refusal of the following charge: "The employés of a railway freight train which stops at a station to load cattle, or for any other purpose, are not required to give a signal by ringing the bell or sounding the whistle or otherwise before starting the train, unless they have notice that some one is or may be in a position of danger with reference to the train, and if you believe from the evidence that defendant's employés at Dilley, in charge of the train in question, had no notice of any persons, if any, crossing or attempting to cross under or between the cars at the time Dr. Terry, the plaintiff, undertook to cross, you are instructed that the employés operating the train were not required to sound the whistle or ring the bell or give any other signal before moving the cars; and in this connection you are instructed that the employés of defendant had a right to block the crossing in question for such a length of time, if any, as was reasonably necessary, if at all, in bedding the cars and loading the cattle at the time and place in question."

Assuming the first portion of this charge to be sound and applicable to the facts of this case, the rest of the charge was incorrect. What follows would have told the jury that defendant was under no duty to give signals in this instance, unless the employés had received notice that persons were crossing or in the act of crossing *at the particular time*, which would have been an improper restriction. In addition to this, the final portion of the charge was on the weight of the evidence. Its effect was that defendant had a right to block the streets with its train during all the time it took to bed and load this train, which consisted of 19 stock cars and consumed 5 or 6 hours; and it is too plain for argument that the charge would not have allowed the jury to consider the practicability of leaving the crossings open during the progress of the bedding and loading.

[9] The ninth complains of the court's qualifying a charge, as follows: "If you believe from the evidence that certain school children crossed the track under or between the cars at Dilley at the time in question, without the train being cut, you are instructed that you cannot consider such fact, if you find it to be a fact, in passing upon the question of whether or not plaintiff was guilty of contributory negligence in climbing over the drawheads between the cars at the time he did attempt to cross. Special charge No. 5, requested by defendant. Hicks &

Hicks, F. C. Davis, Mason Maney, S. T. Phelps, attorneys. Given with this qualification by the court: That the jury may consider such fact, if you find it to be a fact, in connection with all the facts and circumstances in evidence on the issue of notice to the employés of defendant that persons, if any, were so crossing the track. J. F. Mullally, Judge."

We overrule this assignment. Appellant's purpose was to have the jury charged not to consider, upon the issue of contributory negligence, the evidence that certain school children crossed the track under or between the cars. Defendant got this instruction, and by the qualification the jury were in effect told that such was the law, but that they could consider the evidence on the issue of notice to defendant that the crossing was being used. The jury must have understood that it was upon this issue, and not the issue of contributory negligence, that it could be considered. We think it cannot be denied that the court was correct in what it stated in the qualification. And it is by no means clear that the court did not err in appellant's favor by giving the charge asked.

[10] The following case appears to hold that testimony that other persons crossed the train in the manner plaintiff did was admissible on the issue of his contributory negligence. Railway v. Johnson, 111 S. W. 759. This, of course, would not be so in reference to children of tender age. But some of these children were 16 or 17 years of age. However, the court excluded consideration of this evidence in regard to contributory negligence, and allowed it to be considered only in its bearing on notice.

[11] In this connection, it is best to consider the thirteenth assignment, which complains of the refusal of a charge, in substance, that the jury could not consider the fact that certain men crossed the track under and between these cars, without the train being cut, in passing on the question of plaintiff's contributory negligence. The above case of Railway v. Johnson holds that testimony of that character is admissible on said issue. Appellee states that a writ of error was denied by the Supreme Court in that case; but we have not been able to verify this. It would have been error in this case to give the charge asked for another reason, which is that testimony was introduced by defendant showing that other persons, in the exercise of ordinary care, instead of going over the train, went around the train. The effect of such testimony was to show that plaintiff had not exercised ordinary care. Testimony that others went over the cars, as plaintiff did, was therefore proper on that issue. This disposes, also, of the fourteenth assignment.

The tenth complains of the first paragraph of the court's charge. None of the criticisms is found to be well taken.

From what has been stated, we overrule the eleventh and twelfth assignments, which complain of the overruling of the motion for new trial.

The sixteenth complains of witnesses being allowed to testify to their having crossed under or between the cars on that afternoon. It appears that the bill of exceptions does not include one witness who so testified. But, as already explained in this opinion, the testimony was admissible, both on the issue of notice in its bearing on defendant's negligence and of plaintiff's contributory negligence.

We overrule the seventeenth, which complains of the verdict being too large.

Affirmed.

COBBS, J., did not participate in this opinion.