# Sweat's Administrator v. Louisville & Nashville Railroad Company.

(Decided January 25, 1918.)

## Appeal from Nelson Circuit Court.

1.   Railroads — Trespassers — Action for Death of — Pleading. — Where in an action to recover of a railroad company damages for the death of the plaintiff's intestate, caused by her collision with a passenger train in attempting to cross the railroad track after passing between the engines of two freight trains standing with their attached cars on a side-track, the petition alleges that the death of the decedent was caused by the negligence of the railroad company's servants in charge of the two freight trains in failing to warn her of the approach of the passenger train; and that the coming of the passenger train was known to them but was not known to her: Held, that the failure of the petition to allege that the decedent could not, by the exercise of ordinary care, have discovered the approach of the train before it struck her, and that her peril from the approaching passenger train was discovered by the railroad company's servants on the freight trains at such time before her collision with the train as that, by the exercise of ordinary care, they could have warned her of the danger and thereby prevented her death, rendered the petition fatally defective. Hence, the action of the circuit court in sustaining a demurrer thereto was not error.

2.   Railroads—Trespassers—Lookout Duty—Pleading.—Being a trespasser upon the railroad company's tracks, the servants of the latter on the freight trains were under no duty to keep a lookout for the decedent or for her safety; therefore, the railroad company could not be made liable for the failure of its servants on the freight trains to warn the decedent of the coming of the passenger train and of her danger therefrom, unless the peril resulting to her from going upon the track was discovered by these servants at such time as that they could, by the exercise of ordinary care, have prevented her death. Considered as a whole, the petition, as amended, fails to sufficiently show that the decedent's death was not caused by her own negligence, and does not state a cause of action against the railroad company.

ERNEST E. FULTON, FRANK E. DAUGHERTY and W. H. FULTON for appellant.

BENJAMIN D. WARFIELD, JOHN A. FULTON and JOHN S. KELLEY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE—
Affirming.

This is an appeal from a judgment of the Nelson circuit court sustaining a general demurrer filed by the appellee to the appellant's petition, as amended, and, upon his declining to plead further, dismissing the action. The action was brought by appellant as administrator of the estate of Elizabeth Sweat, deceased, to recover of the appellee damages for her death, alleged to have been caused by its negligence and that of its servants, so the question presented for our decision by the appeal is whether the petition, as amended, states a cause of action.

The appellant's intestate seems to have met her death under the following circumstances: Though a resident of New Hope, a village in Nelson county situated on the appellee's line of railroad known as the "Knoxville Branch," the decedent was employed in the bottling department of a distillery located on appellee's railroad about two miles from that village. It was the custom of the decedent to walk to and from her work, leaving her home in the morning and returning in the afternoon. The county road leading from the distillery to New Hope crosses appellee's railroad track at a point a quarter of a mile distant from New Hope, and from the crossing parallels the railroad track to the latter place. At this crossing there is a long sidetrack or switch which extends from New Hope to and beyond the public crossing, nearly to a private crossing several hundred yards on the other side thereof. The sidetrack is crossed by the county road where it crosses the main track.

On the day of the accident the decedent in returning to her home from the distillery, upon reaching the public crossing previously mentioned, found it obstructed by a freight train standing on the sidetrack, which had been run thereon to allow the passing on the main track of a passenger train then due and on its way to Louisville. In addition to the freight train standing on the crossing, there was another freight train occupying the sidetrack above the crossing which had also gone thereon to get out of the way of the passenger train. In order to find a place to cross the two tracks unoccupied by the freight train standing on the sidetrack, and over the public crossing, the decedent left the county road at the crossing and proceeded along and south of the sidetrack until she reached the engine of the first freight train,

when she discovered the other freight train standing further up on the sidetrack with its engine facing that of the first train. Observing that there was a space of about twenty feet between the two engines, the decedent walked between them over the sidetrack and onto the main track, and, in thus attempting to cross the main track was struck and killed by the passing passenger train.

The above facts are set forth by the petition, in substance, as we have stated them but with greater detail and much quoting of evidence. The original petition alleges that the death of the decedent was caused by the negligence of appellee and its servants in charge of the freight trains in unreasonably obstructing with them the public crossing "more than five minutes," but in the amended petition it was alleged that her death was caused by the negligence of the servants in charge of the freight trains, in failing to warn her of the danger of going upon the main track immediately before she was struck by the passenger train; and that the danger was not known to her but was known to them. There is no complaint that the passenger train did not give the usual signals for the public crossing in approaching it, or that its rate of speed was unusual. We are unable to see how the obstruction of the crossing by the freight trains or either of them, though conceded to be unreasonable and negligent, can be regarded as the proximate cause of the decedent's death. Indeed, this is admitted in the brief of appellant's counsel, and in effect abandoned as a ground of recovery. Its materiality, however, is urged for the purpose of indicating the necessity for the decedent's leaving the crossing and going upon the main track at the place of the accident.

The remaining ground of recovery relied upon is the failure of appellee's servants on the freight trains to warn the decedent not to go upon the track. And while the petition and amendment both allege that the decedent did not know of the danger attending her stepping upon the main track immediately before the train struck her, it is nowhere alleged therein that she was not familiar with the time of the running of passenger trains at New Hope and the place of the accident, or that the train by which she was killed was not running on its usual schedule time. The fact that she daily twice passed the crossing in going to and from her place of work

would seem to indicate her familiarity with the running of such trains.

No authority is cited by appellant's counsel sustaining their contention that the freight train employees owed decedent the duty of warning her of the coming of the passenger train. In neither of the two cases cited by them, Gregory v. L. & N. R. R. Co., 25 R. 1986, and Kendall v. L. & N. R. R. Co., 76 S. W. 376, was a recovery allowed. On the contrary, in both of them the jury were peremptorily instructed by the trial court to find for the defendant and both judgments were affirmed on appeal. Although it is true that in each of these cases the ground of recovery relied on was the failure of an employee, other than those operating the train which inflicted the injury, to warn the plaintiff of the danger; in the Gregory case this court made no ruling on the question at all, but disposed of the case by holding that the engineer of the freight train, who, it was claimed, should have warned Gregory of the danger, did not know that the passenger train which struck him was about to pass or that Gregory was unaware of its approach, or suspected that he would continue on the main track in front of the approaching train. In the Kendall case the contention of the plaintiff that the employee who saw Kendall sitting under a freight car half an hour before the accident which resulted in his death, was guilty of negligence because of his failure to warn him of the peril of his position, was overruled, as the car was not then to be moved and it was not known by the employee when it would be moved.

We fail to find it alleged in the petition or amendment that the decedent could not, by the exercise of ordinary care, have known of the approach of the passenger train, regardless of whether or not anyone else warned her of its approach. So as a matter of fact the petition does not exonerate her of contributory negligence in going on the track immediately in front of the train which struck her. But such negligence on her part would not, it is true, prevent a recovery, if in point of fact the employees on the freight trains were charged with the duty of warning her of the danger and had knowledge of her peril in time to have warned her thereof before the train struck her.

The only argument offered by appellant's counsel in justification of the decedent's right to go upon the main

track where the passenger train struck her is that it was made necessary by the unlawful obstruction of the public crossing which, it is contended, gave her the status occupied by the plaintiff in Trent, By, Etc. v. N. & W. Ry. Co., 167 Ky. 319, who, in attempting to cross between the cars at a public crossing, was held by this court entitled to have his case go to the jury. The contention is manifestly unsound. First of all, the plaintiff in the Trent case was a mere child, eight years of age, as to whom the court declared it would not hold, as a matter of law, that he was capable of contributory negligence, and for this reason further declared that the rule applicable to the negligence of an adult could not be applied to him. So, if the decedent here had attempted to cross the track as did Trent by passing under, over or between the cars and had been killed in so doing, she would have been guilty of negligence as a matter of law. And if so, did her attempt to cross the track away from the public crossing under the circumstances attending that act, give her administrator a stronger right of recovery than he would have had if she had made the attempt at the crossing in the manner adopted by Trent? In the Trent case we, in part, said:

"In determining whether or not the court below erred in granting a peremptory instruction, it will be necessary to consider the following questions: (1) Was appellant injured at a public road crossing? (2) Was the road obstructed by appellee's train for an unreasonable length of time? (3) If questions 1 and 2 are answered in the affirmative, would the facts proven support a finding for appellant? If all three of these questions, on the proof, can be answered affirmatively, the court erred in giving the peremptory; if any of them must be answered in the negative the instruction was proper."

The inference deducible from the statement of these propositions would seem to be, that if Trent had not been injured at a public crossing, the action of the trial court in giving the peremptory instruction would not have been error.

There is nothing stated in the petition or amendment that gives the decedent any other status than that of a trespasser. Therefore, the recovery sought for her death must depend upon whether their averments present such facts as, if established by evidence, would show: (1) That it was the duty of appellee's servants in charge of

the freight trains, if they saw the decedent going upon
the railroad track to warn her of the danger attending
such act; (2) that they discovered her peril in such
time as would have enabled them by the exercise of ordi-
nary care to have prevented her death.

The first of these propositions, resting upon such a.
state of facts as are here alleged, does not seem to have
been passed on in this jurisdiction, but in Lapp, Admr.
v. L., H. & St. L. Ry. Co., 178 Ky. 647, recognition
seems to have been given the doctrine embodied in this
proposition. The action was brought by the personal
representative of the decedent to recover of the railroad
company damages for his death, resulting from his be-
ing knocked from a trestle by a train. It appears from
the facts contained in the opinion that the trestle on
which the decedent was killed was being rapaired by the
railroad company and for that reason it had, during the
making of the repairs, an employee at or near the trestle
to watch and control the movement of trains in approach-
ing and passing over it. Complaint was made in the
petition that there was negligence both on the part of
this watchman and the engineer in charge of the train.
In dealing with these contentions, we, in the opinion,
said:

"But it is said that there are two features of this
case that take it out of the ordinary rule relating to
trespassers: (1) That as Marcum knew Taylor was go-
ing on the trestle, it was his duty to signal the engineer
to stop his train, or at least to slack its speed, neither
of which he did; (2) that a person on a trestle when a
train is approaching is necessarily in a position of peril,
and there was sufficient evidence to take the case to the
jury on the theory that the engineer saw or could have
seen Taylor on the trestle in ample time to have stopped
his train before striking him. In support of the first
proposition the case of Glenn's Admr. v. L. & N. R. R.
Co., 28 R. 949, is relied on. Glenn was killed by one of
the trains of the railroad company while wandering on
the track in a state of helpless intoxication. The peti-
tion, to which a demurrer was sustained, averred 'that
appellee's station agent at that station was notified of
the fact that decedent was then on appellee's line of
railway, in a helpless, drunken condition, seventy-five
yards ahead of the train and that he received such notice
before the train came to a stop at the station; . . .

but that the agent failed to give notice to those in charge of the train that decedent was then on the railway; that had he done so the train could have been stopped without damage or loss to appellee or its passengers, and the life of decedent could have been saved. But that having failed to give such notice, the engineer of the train being in ignorance of the facts, ran the train against and over the decedent and killed him.' This court, however, held that the petition stated a good cause of action, saying that it was the duty of the station agent to have notified the persons in charge of the train of the presence of Glenn on the track, and that the railroad company was accountable for this breach of duty on the part of its agents. Another case relied on is Fagg's Admr. v. L. & N. R. R. Co., 111 Ky. 30; Fagg, with the knowledge of one of the railroad company's station agents and also its superintendent was on the track in a drunken and helpless condition, of which condition and his place of peril they had notice in time to have given warning to a train that was approaching, but they failed to do so and Fagg was killed by the train. In holding that the case should have gone to the jury, the court said: 'Should the company be held responsible because its superintendent at Nashville and its agent at Franklin knew that the decedent was on the track in a drunken and helpless condition, and that shortly thereafter a train would pass over its track through the cut, and failed to notify those in charge of it of his situation, and thus avoid the calamity which befell him? We think it should. The knowledge of these officers was the knowledge of the company. From the averments, they could have avoided the injury by the exercise of ordinary care.' To the same effect is C., N. O. & T. P. Ry. Co. v. Marrs' Admrx., 119 Ky. 954. But, plainly, the rule announced in the cases cited should not be applied to the facts of this case. Taylor was neither ignorant, drunk, feeble nor helpless, nor so young in years as to need protection. After Marcum told him the train was coming and that he ought not to go on the trestle, there was no reason why he should have given him any further attention and he was not guilty of any neglect or breach of duty in failing to observe the course that Taylor pursued. He had the right to and apparently did assume that Taylor was capable of taking care of himself and would not needlessly put himself in a place of danger after he had been warned that the train was coming.''

The facts of the instant case, like those of the Lapp case, readily differentiate it from the cases cited and discussed in the Lapp case. Here the decedent was neither ignorant, nor helpless; at any rate it is not so alleged in the petition, therefore, the presumption must be indulged that she was possessed of average vision and hearing and also of ordinary intelligence. This being true there would seem to be no reason why the appellee's employees in charge of the freight trains should have taken it for granted under the circumstances attending her movements that the decedent had not heard the signals given by the approaching train for the public crossing, nor of its immediate coming, or would not wait for it to pass before attempting to go upon the track over which it ran. On the contrary, had they not the right to assume, as apparently they did assume, that the decedent was capable of taking care of herself and would not needlessly put herself in a place of danger, after having every opportunity to know that the train was coming?

Conceding, however, as we must, the correctness of the doctrine declared in Glenn v. L. & N. R. R. Co., Fogg's Admr. v. L. & N. R. R. Co., and C., N. O. & T. P. Ry. Co. v. Marrs' Admrx., *supra*, it cannot be applied here because of the absence from the petition, as amended, of two averments essential to the statement of a cause of action, viz.: That the decedent could not, by the exercise of ordinary care, have known of the coming of the train in time to prevent her death; and that her death would not have occurred but for the failure of appellee's servants on the freight train, after discovering her peril, to exercise ordinary care to prevent same. It was not sufficient to merely allege, as was done in the petition, that the decedent did not know of the coming of the passenger train. Being a trespasser and with no duty owing her by appellee's servants to notify her of its coming, it was her duty before venturing on the track to use ordinary care to ascertain whether the train was approaching, and that she did use such care or that its exercise would or could not have prevented her death, should have been alleged.

On the other hand as she was a trespasser upon appellee's right of way appellee's servants on the freight trains were under no duty to keep a lookout for her or for her safety; and appellee cannot be made liable for

her death unless the peril resulting to her from going upon the track was discovered by these servants at such a time as that they could, by the exercise of ordinary care, have prevented her death. It is alleged in the petition that appellee's servants on the freight trains knew of the decedent's peril when she stepped upon the track and that they failed to warn her of the danger in which she thus placed herself; but it is not alleged therein that the discovery by them of her peril was made a sufficient time before her death for them, by the exercise of ordinary care, to prevent it. The omission from the petition and amendment of the two essential allegations mentioned rendered it fatally defective. Considered as a whole it fails to sufficiently show that the decedent's death was not caused by her own negligence, and does not state a cause of action against the appellee.

Wherefore, the judgment of the circuit court sustaining the demurrer to the petition, as amended, and dismissing the action is affirmed. The whole court sitting.